UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| PAUL MAAS RISENHOOVER,  )<br>)<br>Plaintiff,  )<br>)<br>v.  )<br>)<br>)<br>UNITED STATES DEPARTMENT  )<br>OF STATE *et al.*,  )<br>)<br>Defendants.  ) | Civil Action No. 19-715 (BAH)<br>Chief Judge Beryl A. Howell |

## MEMORANDUM OPINION

Plaintiff, Paul Maas Risenhoover, filed this lawsuit under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, to compel disclosure of records maintained by the Department of State ("State"). Defendants State, Executive Office of the President, and National Security Council have moved for summary judgment under Rule 56 of the Federal Rules of Civil Procedure. Defs.' Mot. for Summ. J. ("Defs.' Mot."), ECF No. 68. For the reasons explained below, defendants' motion is granted.

I. BACKGROUND

On March 21, 2015, plaintiff requested from the State Department:

> Directive read by AIT Taipei Director Stephen Young to President Shuibian Chen regarding US demarche against any attempt to join the UN in the name of Taiwan or to freeze the National Unification Council. The directive may have been issued by the White House to the State Department for transmission to the American Institute in Taiwan (AIT), Taipei Office.

1

Decl. of Eric F. Stein, Ex. 1, ECF No. 68-3 at 13 ("Request").  Plaintiff sought records dating from January 1, 2005 "to present" and suggested that the search "be restricted to the State Archiving System."  *Id*.

State's Office of Information Programs and Services ("IPS") responds to requests for access to agency records, including those under the FOIA and Privacy Act.  *See* Stein Decl. ¶ 2.  Upon receipt of a FOIA request, IPS "evaluates the request to determine which offices, overseas post, or other records systems within the Department may reasonably be expected to contain" responsive records.  *Id*.  ¶ 10.  IPS, like plaintiff, identified the State Archiving System ("SAS") as "the only record system reasonably likely to maintain unique" records responsive to plaintiff's FOIA request.  *Id*. ¶ 12.  SAS maintains records that "are commonly referred to as the Central Foreign Policy Records or Central File," which include "documents that discuss or define foreign policy, set precedents, or require action or use by more than one office," and it is "full-text searchable."  *Id*. ¶ 13.

In response to plaintiff's request, an IPS Information Specialist "conducted a full-text search of SAS," utilizing a "combination of terms: (UN OR Referendum) AND 'AIT Director Young,' " within the timeframe of January 1, 2005, to July 8, 2015.  *Id*. ¶ 14.  On October 8, 2015, State informed plaintiff that it had located two responsive documents, namely classified cables, that were being withheld completely under FOIA Exemption 1, codified in 5 U.S.C. § 552(b).  Stein Decl., Ex. 3.  Plaintiff appealed the determination to the Appeals Review Panel, which, on February 14, 2019, affirmed State's decision on the basis that the cables were "properly classified."  Stein Decl. ¶ 9.  Plaintiff filed this action on February 26, 2019.

During the course of this litigation, State "conducted an additional full-text search of SAS for cables sent to and from Taipei, or identified as including an action for Taipei, using the . . . terms 'Chen' AND 'Young' AND 'Taipei' AND ('Unification' OR 'United Nations' OR 'UN,')," within the timeframe of 2006 to2009, when Young served as AIT Director.  Reply in Supp. of Defs.' Mot. for Summ. J., Second Decl. of Eric Stein ("Supp. Stein Decl.") ¶ 5, ECF No. 89-1.  State located three additional classified cables that were withheld also under Exemption 1.  *See id*. ¶¶ 6-10 (describing all withheld documents); *see also id*. ¶ 3 (noting that "[w]hen a directive or demarche is prepared by policymakers in Washington for delivery to a foreign official, it is typically transmitted to the relevant oversees post as a diplomatic cable, and therefore would be present in the SAS archive.").

## II. LEGAL STANDARD

Under Federal Rule of Civil Procedure 56, summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "In FOIA cases, summary judgment may be granted on the basis of agency affidavits if they contain reasonable specificity of detail rather than merely conclusory statements, and if they are not called into question by contradictory evidence in the record or by evidence of agency bad faith."  *Aguiar v. DEA*, 865 F.3d 730, 734–35 (D.C. Cir. 2017) (internal quotation marks omitted) (quoting *Judicial Watch, Inc. v. U.S. Secret Serv.*, 726 F.3d 208, 215 (D.C. Cir. 2013)); *see also Students Against Genocide v. Dep't of State*, 257 F.3d 828, 833 (D.C. Cir. 2001) ("[A]n agency is entitled to summary judgment if no material facts are in dispute and if it demonstrates 'that each document that falls within the class requested either has been produced or is wholly exempt from the Act's

inspection requirements.' " (quoting *Goland v. CIA*, 607 F.2d 339, 352 (D.C. Cir. 1978))).  Most FOIA cases will be resolved on summary judgment.  *Brayton v. Office of the U.S. Trade Representative*, 641 F.3d 521, 527 (D.C. Cir. 2011).

To balance the public's interest in governmental transparency and "legitimate governmental and private interests [that] could be harmed by release of certain types of information," *Judicial Watch, Inc. v. U.S. Dep't of Defense*, 913 F.3d 1106, 1108 (D.C. Cir. 2019) (internal quotation mark omitted) (quoting *FBI v. Abramson*, 456 U.S. 615, 621 (1982)), FOIA has nine exemptions, set forth in 5 U.S.C. § 552(b), which "are 'explicitly made exclusive' and must be 'narrowly construed,' " *Milner v. Dep't of the Navy*, 562 U.S. 562, 565 (2011) (citations omitted) (first quoting *EPA v. Mink*, 410 U.S. 73, 79 (1979); and then quoting *Abramson*, 456 U.S. at 630). "[T]hese limited exemptions do not obscure the basic policy that disclosure, not secrecy, is the dominant objective of the Act."  *Dep't of the Air Force v. Rose*, 425 U.S. 352, 361 (1976).

FOIA authorizes federal courts to "enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant." 5 U.S.C. § 552(a)(4)(B).  District courts must "determine de novo whether non-disclosure was permissible."  *Elec. Privacy Info. Ctr. v. U.S. Dep't of Homeland Sec.*, 777 F.3d 518, 522 (D.C. Cir. 2015).  "FOIA places the burden 'on the agency to sustain its action,' and the agency therefore bears the burden of proving that it has not 'improperly' withheld the requested records*."* *Citizens for Responsibility & Ethics in Wash. v. U.S. Dep't of Justice*, 922 F.3d 480, 487 (D.C. Cir. 2019) (citations omitted) (first quoting 5 U.S.C. § 552(a)(4)(B); and then quoting *U.S. Dep't of Justice v. Tax Analysts,* 492 U.S. 136, 142 n.3 (1989)).  "Ultimately, an agency's justification for

invoking a FOIA exemption is sufficient if it appears 'logical' or 'plausible.' " *Judicial Watch, Inc. v. U.S. Dep't of Defense*, 715 F.3d 937, 941 (D.C. Cir. 2013) (quoting *ACLU v. U.S. Dep't of Defense*, 628 F.3d 612, 619 (D.C. Cir. 2011)).

## III. DISCUSSION

Plaintiff disputes State's withholdings and the adequacy of its search for responsive records. *See generally* Opp'n to Def.'s Statement of Facts ("Opp'n Facts"), ECF No. 70-6; Opp'n and Obj. to Stein Decl. ("Opp'n"), ECF No. 70-2.[1] As discussed in more detail below, plaintiff's challenges are unavailing.

As an initial matter, plaintiff challenges declarant Stein's competency to testify about information he obtained from other individuals. *See* Obj. at 1 (referring to the "best evidence rule"). This challenge is misguided. A "declarant in a FOIA case satisfies the personal knowledge requirement in Rule 56(e) if in his declaration, [he] attests to his personal knowledge of the procedures used in handling [a FOIA ] request and his familiarity with the documents in question." *Barnard v. Dep't of Homeland Sec.*, 531 F. Supp. 2d 131, 138 (D.D.C.

---

[1] Plaintiff's 583-page opposition, ECF No. 70, is an amalgam of documents consisting largely of opinionated assertions that stray far from the issues to be decided. *See* Minute Order (May 27, 2020) (raising renewed concerns about plaintiff's excessive filings of dubious relevance to FOIA). As a general rule applicable here, neither the FOIA requester's identity nor his reason for the request is material to the FOIA analysis. *See Stonehill v. IRS.*, 558 F.3d 534, 538–39 (D.C. Cir. 2009) ([W]hen a document must be disclosed under FOIA, it must be disclosed to the general public and the identity of the requester is irrelevant to whether disclosure is required."); *Engelking v. Drug Enf't Admin.*, 119 F.3d 980, 980–81 (D.C. Cir. 1997) ("[A] requester's personal need for information is immaterial to whether that information is protected from disclosure by one of the exemptions to the FOIA."). Accordingly, only the few documents submitted by plaintiff that substantially comply with the procedural rules and pertain to resolution of the pending summary judgment motion are subject to analysis here. *See* Order (Oct. 9, 2019) (informing plaintiff of such obligations).

2008) (citations and internal quotation marks omitted). The person in charge of a search and document retrieval is "the most appropriate person to provide a comprehensive affidavit." *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1201 (D.C. Cir. 1991) (citing *Meeropol v. Meese*, 790 F.2d 942, 951 (D.C. Cir. 1986)). Stein attests that (1) he is "the Department official immediately responsible for responding to [FOIA] requests[,]" (2) he is "in charge of coordinating the agency's search and recovery efforts with respect" to such requests, and (3) his statements are "based upon [his] personal knowledge" gained "in the course of [his] official duties." Stein Decl. ¶ 1. Therefore, plaintiff's objections to the Stein declaration are overruled.

### A. Claimed Exemption

State argues that the classified records were properly withheld under FOIA Exemption 1. *See* Mem. of Points and Authorities, ECF No. 68-1 at 12-16. The Court agrees.

Exemption 1 applies to "matters that are . . . specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy and . . . are in fact properly classified pursuant to such Executive order." 5 U.S.C. § 552 (b)(1). Exemption 1 "cover[s] not only the content of protected government records but also the fact of their existence or nonexistence." *Larson v. Dep't of State*, 565 F.3d 857, 861 (D.C. Cir. 2009). In considering withholdings under Exemption 1, "a reviewing court 'must recognize that the Executive departments responsible for national defense and foreign policy matters have unique insights into what adverse [e]ffects . . . might occur as a result of public disclosures of a particular classified record.' " *Krikorian v. Dep't of State*, 984 F.2d 461, 464 (D.C. Cir. 1993) (quoting *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981) (internal quotation marks omitted)). Generally, courts "lack the expertise necessary to second-guess such agency

opinions in the typical national security FOIA case." *Halperin v. CIA*, 629 F.2d 144, 148 (D.C. Cir. 1980). Moreover, courts must "accord 'substantial weight' to agency affidavits" in national security cases, *Students Against Genocide v. Dep't of State*, 257 F.3d 828, 833 (D.C. Cir. 2001) (quoting *Goland v. CIA*, 607 F.2d 339, 352 (D.C. Cir. 1978)), particularly "concerning the details of the classified status of the disputed record," *Ray v. Turner*, 587 F.2d 1187, 1193 (D.C. Cir. 1978); *see also Fitzgibbon v. CIA*, 911 F.2d 755, 762 (D.C. Cir. 1990). Indeed, "the text of Exemption 1 itself suggests that little proof or explanation is required beyond a plausible assertion that information is properly classified." *Morley v. CIA*, 508 F.3d 1108, 1124 (D.C. Cir. 2007).

At the same time, however, the court does not "relinquish[ ] [its] independent responsibility" "to conduct a de novo review of the classification decision." *Goldberg v. U.S. Dep't of State*, 818 F.2d 71, 77 (D.C. Cir. 1987) (emphasis and internal quotation marks omitted) (quoting *Military Audit Project*, 656 F.2d at 738). In making such an assessment, the court must mind "that any affidavit or other agency statement of threatened harm to national security will always be speculative to some extent, in the sense that it describes a potential future harm rather than an actual past harm." *Halperin*, 629 F.2d at 149. "[T]o require an actual showing that particular disclosures of" classified information would cause "identifiable concrete harm" would "overstep[ ] by a large measure the proper role of a court in a national security FOIA case." *Id*.

State withheld a total of five Department cables "pursuant to E.O. 13526 sections 1.4(b) and[/or] 1.4(d)." Supp. Stein Decl. ¶¶ 6-10. Executive Order 13562 allows an agency to classify information only if all of the following conditions are met:

> (1) an original classification authority is classifying the information;
> (2) the information is owned by, produced by or for, or is under the control of the United States Government;
> (3) the information falls within one or more of the categories of information listed in section 1.4 of this order; and
> (4) the original classification authority determines that the unauthorized disclosure of the information reasonably could be expected to result in damage to the national security, which includes defense against transnational terrorism, and the original classification authority is able to identify or describe the damage.

Exec. Order No. 13526, 75 Fed. Reg. 707, § 1.1(a) (Dec. 29, 2009). Section 1.4(b) pertains to "foreign government information" and section 1.4(d) pertains to "foreign relations or foreign activities of the United States, including confidential sources." *Id*. State confirms that Taiwan is considered a foreign government for purposes of E.O. 13526. Stein Decl. at 7, n.1 (citing 22 U.S.C. §§ 3303, 3314(1)).

Information properly is classified as "Secret" if its "unauthorized disclosure . . . reasonably could be expected to cause serious damage to the national security that the original classification authority is able to identify or describe," and as "Confidential" if its "unauthorized disclosure . . . reasonably could be expected to cause damage to the national security that the original classification authority is able to identify or describe." *Id*. § 1.2(a)(2), (3). "Damage to the national security" is defined as "harm to the national defense or foreign relations of the United States from the unauthorized disclosure of information, taking into consideration such aspects of the information as the sensitivity, value, utility, and provenance of that information." *Id*. § 6.1(l).

State's declarant has "original classification authority" and is "authorized to classify and declassify national security information." Stein Decl. at 1. He confirms that (1) each withheld

document was "classified at the time of [ ] creation at the Secret level" with a "declassification date" in 2032; (2) the information in the documents "continues to meet the classification criteria of E.O. 13526," and (3) the information has not been "previously authorized or officially acknowledged" for "public release." Supp. Stein Decl. ¶¶ 6-10, 12.

The first cable dated March 19, 2007 was "drafted and approved [solely] by the Office of the Secretary of State" and was classified Secret by the then-Principal Deputy Assistant Secretary of State. *Id*. ¶ 6. It contains "proposed talking points" that were "to be used for a forthcoming discussion with President Shui-bian Chen in March of 2007." *Id*. The talking points cover "several highly sensitive regional political issues," "include candid discussion of U.S. views of particular actors in the region," and were prepared "for the purpose of guiding a confidential discussion with a foreign leader[.]" *Id*.

The second cable, dated March 21, 2007 and classified Secret by then-AIT Director Young, contains "a detailed readout of the [actual] meeting" with President Shui-bian Chen where the "highly sensitive" information was discussed. *Id*. ¶ 7. [2] The document "contains much of the same classified foreign policy information" included in the first cable of talking points, and "indicates that an explicit assurance was provided that the content of the discussion would remain confidential." *Id*.

---

[2] The American Institute in Taiwan (AIT) is a statutorily created non-profit corporation incorporated in the District of Columbia "through which the United States performs consular services on Taiwan and conducts commercial, cultural, and other relations with the people on Taiwan." *Wood ex rel. U.S. v. Am. Inst. in Taiwan*, 286 F.3d 526, 528 (D.C. Cir. 2002). "Whenever the President or any agency of the United States Government is authorized or required by or pursuant to the laws of the United States to enter into, perform, enforce, or have in force an agreement or transaction relative to Taiwan, such agreement or transaction shall be entered into, performed, and enforced, in the manner and to the extent directed by the President, by or through the Institute." 22 U.S.C. § 3305. The President has "delegated the lion's share of his authority over the Institute to the Secretary of State," and the Institute "carries out its statutory responsibilities pursuant to a contract with the State Department." *Wood ex rel. U.S.*, 286 F.3d at 529 (citations omitted). "Put simply, though not an embassy, the Institute functions like one." *Id*. at 531.

The third cable, dated July 17, 2007 and classified Secret by Young, is "a detailed readout of a meeting" Young had with President Shui-bian Chen on July 17, 2007.  The cable "describes in detail the confidential statements made during the meeting and further back and forth" discussions of "highly sensitive subjects concerning the relationship between the United States and Taiwan and possible future actions on each side."  *Id*. ¶ 8.

The fourth cable, dated March 21, 2007 and classified Secret by Young, appears to replicate the second cable that recounts the actual meeting with President Shui-bian Chen in March 2007.  *See id*. ¶ 9; *cf*. ¶ 7.

The fifth cable, dated August 7, 2007 and classified Secret by then-Deputy Secretary of State John Negroponte, contains "proposed talking points to be used for a discussion with President Shui-bian Chen in August of 2007."  *Id*. ¶ 10.  It was "written for the purpose of guiding a confidential discussion with a foreign leader, who would expect the content of that discussion to remain private."  *Id*.  The document covers "discussion of several highly sensitive regional political issues, and include[s] candid discussion of U.S. views of particular actors in the region," "possible actions of foreign leaders," and "references to information shared with the United States in other diplomatic exchanges."  *Id*.

In all but the March 19, 2007 cable, State withheld "written statements provided to the United States by Taiwan, through AIT, in confidence, as well as detailed descriptions of statements made by President Chen during confidential discussions," Supp. Stein Decl. ¶ 18, which qualify as foreign government information under Section 1.4(b).  *See id*. ¶¶ 15-17.  The information comprising all of the cables, including the March 19, 2007 cable, also was classified under Section 1.4(d) because it "concern[s] sensitive aspects of U.S. foreign relations[.]"  *Id*. ¶

20.  State's declarant has reasonably explained why confidentiality is "a vital aspect of successful foreign relations" and the potentially chilling effect on foreign relations if expectations of confidentially are unmet.  *Id*. ¶ 19.

The declarant explains, among other potential harms, that the "inability of the United States to maintain confidentiality in its diplomatic exchanges and exchanges with Taiwan authorities or their representatives . . . could reasonably be expected to damage U.S. national security by diminishing our access to vital sources of information."  *Id*.  Furthermore, it is "crucial that the Department be able to provide policymakers with candid assessments of the various nations with which the United States conducts foreign relations without fear that those internal assessments will be made public," which applies equally to the United States' "relationship with Taiwan and its leaders."  *Id*.  Finally, all of the withheld documents include "discussions of sensitive security topics involving the policies and politics of Taiwan and the broader region" and "candid assessments shared by U.S. and foreign authorities."  *Id*. ¶ 20.  If disclosed, such information "has the potential to inject friction into, or cause damage to" the United States' relationship with Taiwan "as well as other bilateral relationships with countries whose cooperation is important to U.S. national security."  *Id*.   "[C]ourts in this circuit have long recognized the legitimacy of this species of national security harm in the FOIA context." *Unrow Human Rights Impact Litig. Clinic v. U.S. Dep't of State*, 134 F. Supp. 3d 263, 274 (D.D.C. 2015) (examining cases).

State has properly invoked Exemption 1 and "determined that no segregation of meaningful information could be made without disclosing information warranting protection under the law."  Supp. Stein Decl. *Id*. ¶ 21.  Plaintiff has not rebutted State's declaration with

contrary evidence.  Therefore, defendants are entitled to summary judgment on withholding the five cables under FOIA Exemption 1.

### B. Adequacy of the Search

Plaintiff asserts that State's search was "clearly inadequate" because the search terms were "underinclusive."  Opp'n Facts ¶ 9.  State's supplemental search, however, remedied any inadequacy in its initial search.

When a requester challenges an agency's response based on the adequacy of the search performed, "the defending 'agency must show beyond material doubt . . . that it has conducted a search reasonably calculated to uncover all relevant documents.' " *Morley*, 508 F.3d at 1114 (quoting *Weisberg v. U.S. Dep't of Justice*, 705 F.2d 1344, 1351 (D.C. Cir. 1983)).  "In order to obtain summary judgment the agency must show that it made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested."  *Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990).  "Summary judgment may be based on affidavit, if the declaration sets forth sufficiently detailed information 'for a court to determine if the search was adequate.' " *Students Against Genocide v. Dep't of State*, 257 F.3d 828, 838 (D.C. Cir. 2001) (quoting *Nation Magazine v. U.S. Customs Serv.*, 71 F.3d 885, 890 (D.C. Cir. 1995)).  Such "[a]gency affidavits are accorded a presumption of good faith, which cannot be rebutted by purely speculative claims about the existence and discoverability of [ ] documents."  *SafeCard*, 926 F.2d at 1200 (internal quotation marks and citation omitted).

An adequate search is established by the "appropriateness" of the search methods employed, not the "fruits of the search."  Thus, the fact that certain documents were not

located does not equate with an inadequate search.  *Boyd v. Criminal Div. of U.S. Dept. of Justice*, 475 F.3d 381, 390-91 (D.C. Cir. 2007) (citing *Iturralde v. Comptroller of Currency*, 315 F.3d 311, 315 (D.C. Cir. 2003); *Valencia-Lucena v. United States Coast Guard*, 180 F.3d 321, 326 (D.C. Cir. 1999)); *see also SafeCard*, 926 F.2d at 1201 ("When  a plaintiff questions the adequacy of the search . . ., the factual question it raises is whether the search was reasonably calculated to discover the requested documents, not whether it actually uncovered every document extant.").  Summary judgment is inappropriate only "if a review of the record raises substantial doubt" about the reasonableness of the search.  *Valencia-Lucena*, 180 F.3d at 326 (citing *Founding Church of Scientology v. National Security Agency*, 610 F.2d 824, 837 (D.C. Cir. 1979)).  Substantial doubt may arise from an agency's failure "to follow through on obvious leads to discover requested documents" or where the record contains "positive indications of overlooked materials."  *Id*. at 325-26 (citations and internal quotation marks omitted); *see id*. at 327 (finding search inadequate where the agency informed the requester that additional responsive records "may be located" at the "federal records center" but declined to search its stored records at that location).

That SAS is the record system most likely to house responsive records is not in genuine dispute, and reasonably so.³  *See* Request (suggesting that the search "be restricted to the State Archiving System").  Plaintiff apparently questions whether the SAS should have contained documents from other offices, including the White House and the Executive Office of the

---

³       The SAS serves as State's "Central File" that "provides the capability to query over 40 million records through a single interface."  Stein Decl. ¶ 13.  In addition to diplomatic cables, the SAS  maintains diplomatic notes; correspondence to and from the White House, members of Congress, and other federal agencies; position papers and reports; memoranda of conversations; and interoffice memoranda.  Supp. Stein Decl. ¶ 3.

President.  *See* Opp'n Facts ¶ 14 (inquiring "about AIT to TCO or WH NSC EOP to TCO," "WH couriered messages" and "WH carefully penned letters from President to democratically elected leader").  Plaintiff's suggestions, to the extent intelligible, misapprehend FOIA, which obligates an agency to disclose only those records it possesses and controls at the time of the FOIA request.  *Yeager v. Drug Enf't Admin.*, 678 F.2d 315, 321 (D.C. Cir. 1982).  It is "well settled that an agency is not required by FOIA to create a document that does not exist in order to satisfy a request" or "to obtain or regain possession of a record[.]"  *Id*.  In other words, State was not obliged, as plaintiff seems to suggest, to seek out records created by and/or maintained at the White House or any other non-departmental office.

As for the initial query, plaintiff questions State's omission of the term "UNIFICATION" and asserts that the term " 'AIT Director Young' will only catch the exact expression" and the term "UN will not catch United Nations or UNO or United Nations Organization."  Opp'n at 4 ¶ 14.  In response, State revised the search terms to encompass plaintiff's suggestions, "conducted an additional full-text search of SAS," and located three additional classified cables.  Supp. Stein Decl. ¶ 5.  State's discovery of additional cables does not call into question the adequacy of the search since even "a reasonable and thorough search" could "miss[ ]" responsive documents.  *Iturralde*, 315 F.3d at 315.  In any event, plaintiff has offered no "evidence of circumstances sufficient to overcome" the declarant's adequately detailed declarations.  *Id*.  Therefore, State is entitled to summary judgment on the search question as well.

### C. Executive Office of the President and National Security Council

Plaintiff does not dispute in any cogent manner defendants' argument that no claim has been stated against either the Executive Office of the President (EOP) or the National Security Council (NSC).  *See* Mem. at 17-18.  The Court agrees for the simple reason that the complaint is based on neither a FOIA request directly to EOP or NSC nor a referral of records to either entity.  As for the NSC, moreover, the law in this Circuit is clear that the NSC is not an "agency" for purposes of the FOIA, *see Armstrong v. Exec. Office of the President*, 90 F.3d 553, 559 (D.C. Cir. 1996) *cert. denied* 520 U.S. 1239 (1997), and "[o]rganizations that are not an 'agency' under FOIA are neither required to respond to a FOIA request nor subject to a FOIA lawsuit," *Elec. Privacy Info. Ctr. v. Nat'l Sec. Agency*, 795 F. Supp. 2d 85, 92 (D.D.C. 2011).  Accordingly, the claims against EOP and NSC are appropriately dismissed for failure to state a claim.

### IV.  CONCLUSION

For the foregoing reasons, the Court concludes that the State Department has fully complied with the FOIA and no claim has been stated against EOP and NSC.  Accordingly, defendants' motion for summary judgment is granted.  A separate Order consistent with this Memorandum Opinion will be filed contemporaneously.

/s/ *Beryl A. Howell*
CHIEF JUDGE

DATE:  June 12, 2020